UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WISCONSIN

RANDOLPH JAMES LUCAS II, d/b/a X MARKS THE SPOT, Plaintiff, v. TOWN OF LA FOLLETTE, DARWYN BROWN, individually and in his official capacity as Town Chair, MITCHELL COYOUR, individually and in his official capacity as Town Supervisor, CONRAD ST. JOHN, individually and in his official capacity as Tribal Chairman, Defendants.

MASTER COMPLAINT Civil Action / 42 U.S.C. §§ 1983, 1985

Case No.: ____________________ (Assigned by the Clerk upon filing) 26-cv-1027-jdp

## I. PARTIES

1. Plaintiff Randolph James Lucas II is an individual residing at 24653 County Road X, Shell Lake, Burnett County, Wisconsin, operating commercially under the trade name X Marks the Spot, and acting as a general contractor, project designer, and commercial property owner.

2. Defendant Town of La Follette is a municipal entity organized under the laws of the State of Wisconsin, located in Burnett County.

3. Defendant Darwyn Brown is named in his individual capacity and in his official capacity as Town Chair of the Town of La Follette.

4. Defendant Mitchell Coyour is named in his individual capacity and in his official capacity as Town Supervisor of the Town of La Follette, operating commercial business interests (Coyland Creek) within the township.

5. Defendant Conrad St. John is named in his individual capacity and in his official capacity as Tribal Chairman of the St. Croix Chippewa Indians of Wisconsin.

## II. JURISDICTION AND VENUE

6. This action arises under 42 U.S.C. §§ 1983 and 1985, and the Fourteenth Amendment to the United States Constitution. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, with supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Western District of Wisconsin as all acts, omissions, property infringements, and statutory violations alleged in this complaint occurred within this judicial district.

## III. STATEMENT OF FACTS

A. Multi-Generational Legacy and Historical Reliance Interest

8. Plaintiff's family commercial legacy in Burnett County began in 1978, grounded in a multi-generational partnership and familial relationship between Plaintiff's grandfather, John Lawson Sr. ("Papa," operator of Papa John's in Danbury, holder of the first gaming license in Hertel in 1978, operator of the Danbury venue for the tribe, and founder of historic regional community events including Hertel Turtle Days and the Hertel Turtle Races, which Plaintiff personally attended every year), and his half-brother Earl Ackley (tribal leader, postmaster in Trego, Wisconsin, and operator of Ackley Novelty)—whose famous nationwide entertainment, community traditions, early gaming/amusement operations, and commercial food venues put Hertel and Papa John's on the map nationwide.

9. In 1987, Papa John's was destroyed by fire. Following the fire, the bingo crowd and gaming activity, including the gaming license, went up the street.

10. The family's historical commercial records also include Papa John's, John Lawson Sr., and Earl Ackley; amusement and novelty machine licensing associated with Ackley Novelty and Papa John's; the 1978 gaming and commercial infrastructure history; and the United States Post Office operating within the same building as the family

business. The postal presence and Earl Ackley's service as Postmaster are matters for verification through the applicable federal postal records. The record also includes the family's later municipal and tribal commercial licensing history, including the 1996 municipal liquor license.

11. Following municipal naming realignments in 1996 and subsequent zip code changes around 2004 following the closure of the local post office in Hertel, the subject commercial enterprise maintained vested commercial rights under a 1996 municipal liquor license granted by the Town of La Follette.

12. Plaintiff Randolph James Lucas II, d/b/a X Marks the Spot, opened and assumed direct sole ownership and operation of the commercial property and the subject 1996 commercial liquor license in April of 2018.

B. 2019–2020 Municipal Attacks

13. During the 2020 calendar year, Plaintiff suffered catastrophic, compounding personal trauma: the loss of his grandfather in March 2020, six aunts and uncles throughout that year, his mother on November 29, 2020, and his grandmother the day after Christmas. Simultaneously, Plaintiff was suffering from debilitating Lyme disease and severe cognitive impairment (brain fog).

14. Capitalizing on Plaintiff's profound vulnerability, Defendants launched coordinated, bad-faith attacks, procedural non-renewal tactics, and discriminatory actions against his business beginning right around the onset of the COVID-19 pandemic disruptions, stripping Plaintiff's long-standing 1996 commercial license without lawful cause or procedural due process, violating Wis. Stat. § 125.12.

15. Following the non-renewal, Defendant Town of La Follette and Defendant Darwyn Brown reallocated the newly stripped quota slot to the St. Croix Chippewa Tribe in connection with a $10,000 transaction involving Defendant Conrad St. John, specifically supporting multi-million dollar regional commercial developments, including outdoor band shell amphitheater concerts, food venue concessions, and sportsbook operations. The Plaintiff further identifies the tribal board as the entity that handled the grant funds at issue; this allegation is presented as a factual matter for supporting records and is not attributed to the Town unless the records establish that role.

16. In subsequent years, Defendants further manipulated municipal license allocations to grant commercial privileges to Defendant Mitchell Coyour (Coyland Creek). While serving as Town Supervisor, Coyour received favorable municipal accommodations and custom ordinance protections (including recent ordinances shielding employee medical leave), whereas Plaintiff was systematically denied basic accommodations for documented medical conditions.

C. Direct Real Estate Interferences, Blueprint Conversion, and Misappropriated Commercial Assets

17. Prior to the non-renewal, Plaintiff negotiated a valid commercial sale of the X Marks the Spot location for $257,000.00. Defendant Darwyn Brown tortiously interfered with this transaction by falsely claiming the license could not transfer to the buyer and would instead go "next in line," forcing the buyer to abandon the purchase agreement.

18. Plaintiff subsequently offered the property to Defendant Conrad St. John / tribal interests for $199,000.00. Defendant St. John stated "it wasn't that easy," and instead acquired the stripped municipal license slot directly from the town via the $10,000 transaction, causing a combined direct real estate transaction loss of $456,000.00.

19. Acting as project general contractor, Plaintiff performed extensive design, estimating, and development work for a planned commercial smoke shop facility for the tribe, creating custom walk-in humidor specifications, building layouts, and contracting draftsman Steve Goetz to draft formal architectural prints.

20. Following direct project negotiations with tribal representative Susan, tribal leadership formed an administrative committee that seized Plaintiff's contractor work product. The committee passed Plaintiff's blueprints, humidor specs, and Steve Goetz drawings directly to a secondary contractor, who constructed the physical building using

Plaintiff's designs without compensation or credit.

21. The resulting physical structure built from Plaintiff's converted contractor blueprints was subsequently converted by tribal management into the current Eagles Landing RV park check-in building at the St. Croix Casino complex, generating ongoing commercial utility while depriving Plaintiff of contractor fees, royalties, and development profits.

22. Defendants further unlawfully converted Plaintiff's prior professional labor, development history, and intellectual property—specifically including Plaintiff's employment in the tribal planning department hired by Mobin Merrill, solar and wind energy studies conducted across 2010 and 2011 alongside his wife's work for the tribe, historical Danbury fishery operations conducted for J. Emery (including coordinating meetings and commercial feasibility studies with Sweetwater Organics out of Milwaukee to bring aquaponics and advanced aquaculture development up to the region, which resulted in demotion and withheld compensation), and extensive residential rehab work—along with the subsequent smoke shop estimates, bids, and design prints, utilizing these assets without compensation or attribution.

D. Ongoing Retaliation, Job Sabotage, Tool Thefts, and Public Records Issues

23. Over the last three years, Plaintiff has been completely "screwed over" on four separate major contractor/commercial jobs due to municipal interference and local economic blackballing. Furthermore, Plaintiff has suffered ongoing, targeted victimization through the direct theft of tools right at his home.

24. To conceal these transfers, quota manipulations, contractor conversions, and insider protections (such as custom employee medical leave ordinances designed to cover town operations), Defendants systematically altered, falsified, and withheld official Town of La Follette meeting minutes, while imposing unlawful $520 "gatekeeping" fee demands to block public records access and obstruct proof of municipal corruption in violation of Wis. Stat. §§ 19.35 and 19.37.

## IV. CAUSES OF ACTION

### COUNT I: Deprivation of Due Process (42 U.S.C. § 1983)

25. Defendants used municipal authority under color of law to arbitrarily deprive Plaintiff of vested commercial property rights and liquor license operations for X Marks the Spot without statutorily compliant notice, fair hearing, or procedural protections guaranteed by the Fourteenth Amendment and Wis. Stat. § 125.12.

### COUNT II: Denial of Equal Protection & Disability Accommodation Failure (42 U.S.C. § 1983)

26. Defendants demonstrated direct disparate treatment by enacting custom ordinances (including special medical leave protections for insiders) and benefits for town board insiders like Mitchell Coyour while enforcing arbitrary non-renewals and denying basic disability accommodations to Plaintiff during his battle with Lyme disease and brain fog.

### COUNT III: Civil Rights Conspiracy & Tortious Interference (42 U.S.C. § 1985 / State Tort Law)

27. Defendants conspired to exploit Plaintiff's personal tragedies and medical vulnerabilities during 2019 to convert municipal quota slots, interfere with Plaintiff's $257,000.00 and $199,000.00 real estate purchase agreements for X Marks the Spot, and expropriate contractor estimates and blueprints to enrich favored private and tribal commercial operations.

### COUNT IV: Misappropriation of Contractor Work Product, Conversion of IP & Unjust Enrichment

28. Defendants unlawfully converted Plaintiff's proprietary professional labor, 2010–2011 solar and wind studies, tribal planning department contributions under Mobin Merrill, Danbury fishery project labor and Sweetwater Organics feasibility studies for J. Emery, residential rehab projects, contractor building designs, humidor specs, Steve Goetz architectural prints, smoke shop bids, multi-generational commercial restaurant goodwill and nationwide famous 1978 first gaming license history in Hertel (Papa John Lawson Sr. and Earl Ackley, postmaster in Trego), and related developmental assets for tribal commercial gain—constructing the casino RV check-in building directly from Plaintiff's stolen plans and enriching themselves at Plaintiff's direct expense.

**COUNT V: Violation of Wisconsin Public Records Law (Wis. Stat. §§ 19.35 and 19.37)**

29. Defendants imposed arbitrary $520 paywalls and altered official meeting minutes to obstruct public inspection of license allocation records, contractor files, municipal transactions, and insider ordinance records.

## V. RELIEF DEMANDED

WHEREFORE, Plaintiff Randolph James Lucas II d/b/a X Marks the Spot respectfully requests that judgment be entered against Defendants, jointly and severally, for:

Direct Real Estate & Commercial Losses: $456,000.00 for destroyed property transactions ($257,000.00 + $199,000.00).

Compensatory, Lost Wages, and Emotional Distress Damages: $3,000,000.00 for total loss of business earnings, immediate and ongoing lost wages across four sabotaged jobs over the last three years, severe emotional distress from compounding 2019 family losses and Lyme disease/brain fog, reputational tarnishment destroying local employment viability, home tool thefts, uncompensated professional labor (planning, solar/wind studies, Danbury fishery and Sweetwater Organics feasibility meetings, residential rehabs), converted contractor blueprints/humidor designs/smoke shop bids, stolen development rights for the casino RV check-in/smoke shop building, Papa John's/Hertel commercial and first gaming license history conversion, converted IP, and economic destruction resulting from the targeted shutdown.

Civil Rights & Punitive Damages: $15,000,000.00 against Defendants Brown, Coyour, and St. John individually for willful misconduct under color of law.

Total Monetary Demand: $18,456,000.00.

Injunctive Relief & Costs: Order requiring release of original, unedited meeting minutes, waiver of unlawful $520 public records fees, and recovery of all legal filing costs.

DATED: Oct 6, 2026 Respectfully submitted, Randolph James Lucas II, Plaintiff Pro Se d/b/a X Marks the Spot 24653 County Road X Shell Lake, WI 54871 715-520-7814